On respondent's petition for reconsideration filed April 3, and appellant's response filed April 14, petition for reconsideration granted; former opinion (166 Or App 312, 999 P2d 1197) adhered to May 17, 2000

# NIKE, INC.,
an Oregon corporation,
*Appellant,*

*v.*

# NORTHWESTERN PACIFIC INDEMNITY COMPANY,
an Oregon corporation,
*Respondent.*

## (C96-0209CV; CA A97847)

1 P3d 1060

Teresa H. Pearson, Ridgway K. Foley, Jr., Greene & Markley, P.C., G. Kevin Kiely and Cable Huston Benedict Haagensen & Lloyd LLP for petition.

Thomas W. Sondag, Lane Powell Spears Lubersky, LLP, James L. Hiller and Hitt Hiller & Monfils *contra*.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

LINDER, J.

**LINDER, J.**

Northwestern Pacific Indemnity Company (Northwestern) seeks reconsideration of our decision in *Nike, Inc. v. Northwestern Pacific Indemnity Co.*, 166 Or App 312, 999 P2d 1197 (2000). We write to address Northwestern's assertion that we made "two critical factual errors" in our opinion.

The issue in this case is whether Nike, Inc. (Nike)— Northwestern's insured—timely brought this action on its insurance policy covering losses due to employee theft. Resolution of that issue depends on whether Nike knew of the theft more than two years before Nike filed this action. As we explained in our opinion, a central focus of the parties' arguments below was the significance of the issuance of a Taiwanese indictment against Nike's employee. Nike argued that the indictment provided it with new and telling evidence that its employee had acted intentionally, rather than merely negligently, in aiding a Nike customer to commit theft. In particular, Nike relied on the fact that the Taiwanese indictment recited that the employee, in the course of the Taiwan prosecutor's investigation of Nike's loss, lied in a court examination on the matter. At trial, Northwestern took the position that the indictment added nothing to what Nike knew about the loss. Northwestern argued that the "court examination" to which the indictment referred consisted of three or four prior court hearings that Nike lawyers had attended and that had taken place significantly before the indictment issued. The trial court concluded that in fact Nike lawyers had attended the court proceedings in which the employee lied and that the indictment therefore added nothing to Nike's knowledge. *Id.* at 328.

In our opinion, we stated:

"The problem with the trial court's reasoning, as Nike points out and as Northwestern now concedes, is that the summary judgment record does not support it. * * * The date of the court examination referred to in the indictment is not in the summary judgment record. There is no evidence that Nike's lawyers attended that examination; nor is there any evidence that Nike's lawyers were even aware of

it. In short, nothing in the record establishes that the 'preliminary hearings' to which Bolton referred and at which Nike lawyers were present were the same 'court examination' to which the Taiwan prosecutor later referred in the indictment. Northwestern now agrees that, viewing the record in the light most favorable to Nike, we must conclude for present purposes that the first that Nike knew of Su's in-court denials of his responsibility for violating Nike's policy was when the indictment issued in February 1994."

*Id.* at 328-29.

■    In seeking reconsideration, Northwestern does not dispute the contents of the record *per se*. Northwestern takes issue only with our statement that it "concedes" that the summary judgment record does not establish that Nike lawyers were present at the hearing in which the employee lied. We quote from a footnote in Northwestern's brief:

> "Nike correctly observes that there is no evidence in the record as to whether this 'court examination' was the same as the 'three or four preliminary hearings' conducted by the prosecutor—and attended by Nike's lawyers—prior to June 10, 1993 (the date of Mr. Bolton's statement under oath) or whether this examination took place after that date."

As that statement reveals, Northwestern took a very different view of the record on appeal from the view it took before the trial court. Contrary to its position at trial, Northwestern expressly acknowledged to us that the record did not establish that Nike's lawyers were present at the court examination referred to in the indictment. We therefore stand by our description of Northwestern's concession.

■■    The other "critical factual error" that Northwestern identifies is our description of Northwestern as having "agreed" that, given the applicable standard of review, the record before us requires us to view Nike as having learned of the employee's in-court denials when the indictment issued. Northwestern may not have "agreed" to as much in so many words. It effectively did so, however, by not arguing for a contrary inference. In all events, the relevant observation is that the proper standard of review requires us, on this record, to

give Nike the benefit of the inference on that particular point. Northwestern did not in its brief, and does not now, contend otherwise.

Petition for reconsideration granted; former opinion adhered to.